IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUL 2 3 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:25-cr-00225-RWS-NCC |
| | ) |
| RENE GARCIA, | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR PRETRIAL DETENTION AND HEARING

Comes now the United States of America, by and through its Attorneys, Matthew T. Drake, Acting United States Attorney for the Eastern District of Missouri, and Torrie J. Schneider, Assistant United States Attorneys for said District, and moves the Court to order Defendant detained pending trial, and further requests that a detention hearing be held three days from the date of Defendant's initial appearance before the United States Magistrate under Title 18, United States Code, § 3141, et seq.

As and for its grounds for detention, the government requests this Court consider the following factors under Title 18, United States Code, Section 3142.

## Grounds for Detention

1.      Defendant is charged with Conspiracy to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 846, which carries a maximum penalty of life imprisonment; and Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)

and 841(b)(1)(A), which carries a maximum penalty of life imprisonment.

## Presumption in Favor of Detention

2.  Accordingly, a rebuttable presumption arises under Title 18, United States Code, Section 3142(e)(3) that there are no conditions or combination of conditions that will reasonably assure Defendant's appearance as required, and the safety of the community.

## Nature and Circumstances of the Offense

3.  Title 18, United States Code, Section 3142(g)(1) requires this Court to consider the nature and circumstances of the offense charged, including whether the offense involves a crime of violence or a firearm. The offenses Defendant is charged with involve controlled substances; therefore, they are serious.

4.  According to the Drug Enforcement Administration, the Jefferson County Municipal Enforcement Group (JCMEG) acquired CS1, who provided information regarding **Christopher TAYLOR**'s cocaine distribution. Through controlled buys, agents identified **TAYLOR**'s source of supply as **Stanford TIMES**. Through Title-III wiretap interceptions, agents identified **Vincent WOODS** as working with **S. TIMES** to distribute drugs and **Grant BERRY** as their source. Through intercepted calls and tolls, agents identified **Arturo VILLALOBOS** as one of **BERRY**'s top contacts. As such, agents obtained a PLW on **VILLALOBOS**'s phone and a GPS tracker for his vehicle.

5.  With that information, on March 24, 2025, agents set up physical surveillance outside **BERRY**'s residence. That afternoon, agents observed **BERRY**

exit the residence carrying a large, white trash bag and shoe boxes, which he placed in his vehicle. Agents arrested **BERRY** and searched his home and car and seized 13 kilograms of cocaine.

6. After arresting **BERRY** and seizing his phone, a confidential source from the Overland Police Department (OPCS), used **BERRY**'s phone to contact **Wally BURCIAGA**, whom agents identified as the Mexican source. On April 6, 2025, the OPCS advised that they and **BURCIAGA** coordinated another shipment of cocaine to St. Louis. **BURCIAGA** used tractor-trailer driver **Rene GARCIA** to drive the shipment. **GARCIA** advised the OPCS regarding his estimated arrival time and meeting location—Love's Travel Stop. Agents provided the OPCS with $10,000 in U.S. Currency and $90,000 in sham currency, vacuum sealed, and a recording device. At the time of the buy, **GARCIA** pulled into the lot and exited his truck carrying a large, weighted duffel bag, which he placed in the OPCS's vehicle. The OPCS met agents at a predetermined location and provided them with the duffel bag, which contained 12,065.7 grams of cocaine hydrochloride.

7. **GARCIA** left Love's and after he was some distance away from St. Louis, agents initiated a traffic stop of his tractor-trailer. **GARCIA** consented to a search of the truck and agents recovered the real and sham currency, which was sitting on top of the sleeper. He claimed it was for a divorce. Agents also observed cocaine residue in the truck and **GARCIA** admitted using cocaine. He denied agents' request to search his phone.

## The Weight of the Evidence

8.  Title 18, United States Code, Section 3142(g)(2) requires this Court to consider the weight of the evidence against Defendant, which is strong. Agents intercepted his tractor-trailer after he delivered more than 12 kilograms of cocaine to a confidential source, in exchange for what he believed was $100,000 in U.S. Currency.

## The History and Characteristics of Defendant

9.  Title 18, United States Code, Section 3142(g)(3) requires this Court to consider the history and characteristics of the person, including the person's character, physical and mental condition, employment, financial resources, length of residence in the community and community ties, past conduct, history of drug or alcohol abuse, criminal history, and history related to appearing for court hearings.

10. Defendant has no ties to this community. He is from the El Paso, Texas-area and although he has legal status in this country, he is not a citizen.

11. Defendant's criminal history does not reflect criminal convictions, but it does reflect a troubling arrest history, as well as pending cases. Between 2009 and 2022, Defendant was arrested and charged with adult causes bodily injury to family member five times. In 2013, he was charged with assault, third degree. In 2019, he was charged with violate bond/protective order. All those charges were dismissed.

12. In 2024, Defendant was arrested for terroristic threats, which appears to be pending charges in a "pre-filed case." Finally, in 2025, he was charged with

4

interfere with public duties, which appears similar to obstruction. Defendant is pending arraignment on that case this month.

13. Thus, Defendant's lack of ties to this community, and potentially the country, as well as his criminal history weigh in favor of detention and reflect Defendant's dangerousness to the community and risk of flight he poses.

## The Nature and Seriousness of the Danger to the Community

14. Defendant poses a significant danger to the community. As previously noted, Defendant was involved in the cross-country transportation of large quantities of cocaine. He delivered more than 12 kilograms of cocaine to St. Louis and collected what he believed to be $100,000. Thus, the safety of the community would clearly be at risk if the Court released Defendant on bond. *See* 18 U.S.C. § 3142(g)(4).

## Risk of Flight

15. Defendant faces a lengthy term of imprisonment, which will be the first term of imprisonment he has ever faced. Further, as noted above, Defendant is not a citizen, which increases his risk of flight. Therefore, his risk of flight is significant.

## Conclusion

16. The government submits that after considering all the factors in Title 18, United States Code, Section 3142(g), including the presumption in favor of detention, the Court will find that they weigh in favor of detention. There is clear and convincing evidence that no condition or combination of conditions will

reasonably assure the safety of any person and the community and there is a preponderance of evidence that no condition or combination of conditions will reasonably assure Defendant's appearance in court.

          Respectfully submitted,

          MATTHEW T. DRAKE
          Acting United States Attorney

          */s/ Torrie J. Schneider*
          TORRIE J. SCHNEIDER
          Assistant United States Attorney