UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,              )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )    No. S1:4:25-CR-225-HEA-8
                                       )
RENE GARCIA,                           )
                                       )
    Defendant.                         )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

### 1.    PARTIES

The parties are Defendant RENE GARCIA, represented by defense counsel Lucas Glaesman, and the United States of America ("Government" or "United States"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2.    GUILTY PLEA

A.    **The Plea:** Under Rule 11(c)(1)(A) and (c)(1)(B) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count One of the Superseding Indictment, the Government agrees to move to dismiss Count

1

Four at the time of sentencing. The Government further agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time in connection with the charges set forth in the Indictment. .

**B.** **The Sentence:** The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis set forth in this agreement was the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court under any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

## 3. ELEMENTS

As to Count One, Defendant admits knowingly violating Title 21, United States Code, Section 846, as punishable by Title 21, United States Code, Section 841(b)(1)(A); admits there is a factual basis for the plea; and fully understands that the elements of the crime are:

    (i)      From a date unknown, but from at least October 2024, and continuing until on or about July 2025, two or more persons reached an agreement or came to an understanding to distribute cocaine, a schedule II controlled substance;

    (ii)    Defendant voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some later time while it was still in effect; and

2

(iii)    At the time Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

(iv)    The quantity of cocaine Defendant conspired to distribute exceeded 5 kilograms.

## 4.    FACTS

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct under Section 1B1.3:

In June 2024, the Jefferson County Municipal Enforcement Group (JCMEG) acquired CS1, who provided information regarding Christopher TAYLOR's cocaine distribution. Through controlled buys, agents identified TAYLOR's source of supply as Stanford TIMES. Through Title-III wiretap interceptions, agents identified Vincent WOODS as working with S. TIMES to distribute drugs and Grant BERRY as their source. Through intercepted calls and tolls, agents identified Arturo VILLALOBOS as one of BERRY's top contacts. As such, agents obtained a PLW on VILLALOBOS's phone and a GPS tracker for his vehicle.

With that information, on March 24, 2025, agents set up physical surveillance outside BERRY's residence. That afternoon, agents observed BERRY exit the residence carrying a large, white trash bag and shoe boxes, which he placed in his vehicle. Agents arrested BERRY and searched his home and car and seized 13 kilograms of cocaine.

3

After arresting BERRY and seizing his phone, a confidential source from the Overland Police Department (OPCS), used BERRY's phone to contact Wally BURCIAGA, whom agents identified as the Mexican source. On April 6, 2025, the OPCS advised that they and BURCIAGA coordinated another shipment of cocaine to St. Louis. BURCIAGA used tractor-trailer driver Rene GARCIA to drive the shipment. GARCIA advised the OPCS regarding his estimated arrival time and meeting location—Love's Travel Stop. Agents provided the OPCS with $10,000 in U.S. Currency and $90,000 in sham currency, vacuum sealed, and a recording device. At the time of the buy, GARCIA pulled into the lot and exited his truck carrying a large, weighted duffel bag, which he placed in the OPCS's vehicle. The OPCS met agents at a predetermined location and provided them with the duffel bag, which contained 12,065.7 grams of cocaine hydrochloride.

GARCIA left Love's and after he was some distance away from St. Louis, agents initiated a traffic stop of his tractor-trailer. GARCIA consented to a search of the truck and agents recovered the real and sham currency, which was sitting on top of the sleeper. Agents also observed cocaine residue in the truck and GARCIA admitted using cocaine.

## 5.  **STATUTORY PENALTIES**

Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is life imprisonment; a fine of not more than $10 million, or both such imprisonment and fine. The Court shall also

4

impose a period of supervised release of not less than five years. **Defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten years.**

In the event Defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, Defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

6.   **U.S. SENTENCING GUIDELINES (2025 MANUAL)**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

A.  **Chapter 2 Offense Conduct:**

i.  **Base Offense Level:** The parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of cocaine for which Defendant is accountable, including relevant conduct, is at least five kilograms, but less than fifteen kilograms, resulting in the agreed Base Offense Level.

ii.  **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:  none known at this time.

5

B. **Chapter 3 and 4 Adjustments:**

i. **Acceptance of Responsibility:** The parties recommend that two levels should be deducted under Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level under Section 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The parties agree that Defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by Defendant which it believes are inconsistent with Defendant's eligibility for this deduction—including any violation of this agreement— the Government may present said evidence to the Court and argue that Defendant should not receive all or part of the deduction under Section 3E1.1 without violating the plea agreement.

ii. **Adjustment for Certain Zero-Point Offenders:** If the Court determines that Defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because Defendant meets all the criteria under Section 4C1.1(a)(2) through (a)(10).

6

**iii.**    **Safety Valve:** Defendant may be eligible for a two-level reduction if he satisfies all criteria set forth in Sections 2D1.1(b)(18) and 5C1.2(a)(1) through (5). The parties agree that, as of the date of this plea agreement, Defendant has satisfied the criteria set forth in Section 5C1.2(a)(2), (3), and (4). Defendant understands that his eligibility for this reduction is based on his satisfaction of all criteria set forth in Section 5C1.2(a) by the date of sentencing.

**iv.**    **Mitigating Role:** The parties agree that four levels should be deducted under Section 3B1.2(a) because Defendant was a minimal participant in the offense.

**C. Estimated Total Offense Level:**

**i.**    **Count One:** With respect to Count One, the parties estimate that the Total Offense Level is 19, unless Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender under Section 4B1.1. If the Court finds Defendant is a Career Offender, the parties anticipate that the Total Offense Level will be 34 for Count One, and the Criminal History Category will be a Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender.

**D. Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history

and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**E. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7.   WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

**A.   Appeal:**   Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**i. Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**ii. Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth

in the agreement; (2) calculation of Defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by Defendant, or below that range for appeals taken by the Government.

**B.** **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one under Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C.** **Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8.   OTHER

**A.**    **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

9

**B.** **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against Defendant.

**C.** **Supervised Release:** Under any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D.** **Mandatory Special Assessment:** Under Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. Possibility of Detention:** Defendant may be subject to immediate detention under the provisions of Title 18, United States Code, Section 3143.

10

**F. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**G. Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9.   ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS

In pleading guilty, Defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected

11

from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

If Defendant is not a U.S. citizen, the guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

12

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if Defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

13

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Under Federal Rule of Criminal Procedure 11(c) and (d), Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

6/11/26
_____
Date

_____
TORRIE J. SCHNEIDER (#0388364 MN)
Assistant United States Attorney

4/30/26
_____
Date

_____
RENE GARCIA
Defendant

4/30/26
_____
Date

_____
LUCAS GLAESMAN
Attorney for Defendant

14